679 F.2d 20
 29 Fair Empl.Prac.Cas. 405,
29 Empl. Prac. Dec. P 32,752
Larry POPE, Individually and on behalf of all others
similarly situated, Appellant,
v.
CITY OF HICKORY, NORTH CAROLINA, Appellee.
 No. 81-1944.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 4, 1982.
Decided June 1, 1982.
 
 Joyce M. Brooks, Charlotte, N. C. (Sheely & Brooks, Charlotte, N. C., on brief), for appellant.
 E. Murray Tate, Jr., Hickory, N. C. (Tate, Young, Morphis, Bogle and Bach, Hickory, N. C., on brief), for appellee.
 Before RUSSELL and SPROUSE, Circuit Judges, and JAMES C. CACHERIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 The plaintiff, a black male formerly employed by the defendant municipality as a police officer, has sued charging racial discrimination violative of Title VII of the Civil Rights Act of 1964, as amended, and § 1981, 42 U.S.C. The District Judge, after a bench trial, granted judgment in favor of the defendant and the plaintiff has appealed. We affirm.
 
 
 2
 The plaintiff was employed as a police officer by the defendant in July, 1976. Approximately two years later he sought a transfer to the first shift. His application was denied, though he asserts that the applications of two white officers so to transfer were approved. A month later the plaintiff was given a four-day suspension for his failure to report for his scheduled shift on September 16, 1978, choosing instead to attend a family picnic given by his wife's employer. He testified that he had previously attempted to change his scheduled shift but when he was unable to find any officer willing to take his place he went ahead without permission to the picnic. About two weeks later he was involved with a squad car in an automobile accident while driving contrary to department regulations. The squad car suffered damages of $475 in this accident. This accident resulted in a three-day suspension. Two months later he was involved in another accident with a squad car, again while driving in violation of department regulations. This time he was given a thirty-day suspension. While on suspension he received a written reprimand for failure to turn over confiscated property when requested by the property manager. On January 16, 1979, he called the liaison officer in the Police Department and asked her to secure a continuance of a case where he was scheduled to appear as the prosecuting witness on the ground that he was sick and unable to appear. When the police chief learned that instead of being sick at home, the plaintiff was working at the local airport, that officer discharged the plaintiff.
 
 
 3
 The plaintiff appealed his discharge through the grievance procedure provided for all employees of the municipality. In his grievance he made no complaint of his suspension, reprimand or denial of a transfer of shift. A hearing on his grievance as filed was had, resulting in a final decision by the city manager sustaining the discharge. The plaintiff then instituted this action. He sought relief both under the disparate impact and the disparate treatment theory. In support of his disparate impact claim he relied entirely on certain statistical material showing, according to him, a standard deviation of 2.64 in a comparison of disciplinary actions directed at white and black recent hirees in the Department between January 1, 1976 and December 31, 1979. His claim of discriminatory treatment rested on the alleged greater severity in the discipline imposed on him, including his final discharge, than on white officers for similar derelictions.
 
 
 4
 The District Judge in a written opinion in which he painstakingly reviewed all the facts, dismissed the disparate impact claim, finding that the sample size used by the plaintiff in his statistical comparison was too small to be reliable, see, Teamsters v. United States, 431 U.S. 324, 340, n.20, 97 S.Ct. 1843, 1856, n.20, 52 L.Ed.2d 396 (1977); Equal Emp., Etc. v. United Va. Bank, Etc., 615 F.2d 147, 153 (4th Cir. 1980); Roman v. ESB, 550 F.2d 1343, 1348-49 (4th Cir. 1976), and that the plaintiff had used for his statistical comparison a time period, a considerable part of which was without the time period during which the alleged discriminatory actions of which the plaintiff complained occurred, Rich v. Martin Marietta Corp., 522 F.2d 333, 346 (10th Cir. 1975).[1] These findings are not clearly erroneous. Either is sufficient to sustain the district court's ruling. Moreover, it has been said that a claim such as the plaintiff's does not present the model disparate impact claim. "The disparate impact model applies only when an employer has instituted a specific procedure, usually a selection criterion for employment, (such as an aptitude or intelligence test, or height and weight requirements) that can be shown to have a causal connection to a class based imbalance in the (employer's) work force" and has been said not to be "the appropriate vehicle from which to launch a wide ranging attack on the cumulative effect of a company's employment practices." Pouncy v. Prudential Ins. Co. of America, 668 F.2d 795, 800 (5th Cir. 1982).[2] It is obvious that the plaintiff is not complaining in this case of some employment practice or procedure of the defendant, which, though neutral or fair on its face, has a discriminatory impact on blacks and thus does not fit within the model disparate impact claim.
 
 
 5
 The District Judge dismissed the discriminatory treatment claims of the plaintiff, first, because he found that the plaintiff had not established a prima facie case of discrimination either in his discharge or in his earlier suspensions and, secondly, because assuming the plaintiff had proved a prima facie case, the defendant had articulated a legitimate non-discriminatory reason, not rebutted by the plaintiff as pretextual, for all its challenged actions. This latter ruling found its basis in the decision in Texas Dept. of Community Affairs v. Burdine, supra, in which, the Court set forth the procedure to be followed in a discriminatory treatment case:"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate nondiscriminatory reason for the employee's rejection.' ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[3]
 
 
 6
 Without disapproving of the district court's finding that the plaintiff had failed to prove a prima facie case of discriminatory treatment, we rest our affirmance of the ruling on the disparate treatment claim on the alternative Burdine ground stated by the District Judge for his dismissal of this claim. The district court found as a fact that the defendant had met the requirement stated in Burdine of "articulat(ing) some legitimate, nondiscriminatory reason" for the suspensions imposed on the plaintiff, the denial of his requested transfer, and his subsequent discharge and that the plaintiff had not proved that the reasons assigned by the defendant were pretextual. These findings are not clearly erroneous and must be approved. The judgment below is accordingly affirmed.
 
 
 7
 AFFIRMED.
 
 
 
 [1]
 Whether the deviation in this case would support an inference of discrimination was not discussed by the District Judge, and we therefore find no occasion to do so
 
 
 [2]
 See also, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252, n.5, 101 S.Ct. 1089, 1093, n.5, 67 L.Ed.2d 207 (1981):
 "We have recognized that the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes."
 
 
 [3]
 450 U.S. at 252-53, 101 S.Ct. at 1095