Allene FIELDS and Earine Daniels

v.

**TEXAS CENTRAL EDUCATION AGENCY, Texas Commissioner of Education, Texas State Board of Education, and State of Texas.**

Civ. A. No. M–88–97–CA.

United States District Court,
E.D. Texas,
Marshall Division.

May 3, 1989.

On Motion for New Trial
June 6, 1989.

Affirmed, 906 F.2d 1017.

---

Larry Daves, Daves, Hahn & Levy, San Antonio, Tex., for plaintiffs.

Kevin O'Hanlon, Asst. Atty. Gen., State of Texas, Austin, Tex., for defendants.

OPINION AND ORDER

HALL, District Judge.

Plaintiffs bring this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. Sections 621 *et seq.* (ADEA), and the Employee Retirement Income Security Act, 29 U.S.C. Sections 1001 *et seq.* (ERISA). Plaintiffs were dismissed from teaching positions with the Hallsville Independent School District[1] following their failure to pass the Texas Examination for Current Administrators and Educators (TECAT). Passage of this examination is required by Article 13.047 of the Texas Education Code, which was promulgated in 1984 as part of a statewide school reform package by the Texas Legislature. Before the Court is a Motion for Summary Judgment sought by Defendants Texas Education Agency, Texas Commissioner of Education, Texas State Board of Education, and the State of Texas (hereinafter called State Defendants).

In their Second Amended Original Complaint, Plaintiffs allege that State Defendants discriminated against Plaintiffs on the basis of age and/or race by (1) adopting a cut-off score on the TECAT which they knew or should have known would result in a disproportionate impact upon black and/or older teachers; (2) failing to adopt the lower cut-off scores recommended by the staff and two committees appointed to validate the examination; and (3) failing and/or refusing to validate the higher cut-off scores selected by the State Board of Education.

State Defendants contend that Plaintiffs were not employees of State Defendants, and, therefore, have no claim under the ADEA or ERISA against State Defendants. Plaintiffs, in sworn affidavits, describe themselves as having been employees of the Hallsville Independent School District. Plaintiffs further allege in their Second Amended Complaint that Hallsville Independent School District was at all times relevant to this action an employer as that term is defined in Section 11(b) of the

---

1. Hallsville Independent School District is another Defendant in this case, but is not a movant in the Motion for Summary Judgment presently under consideration.

ADEA. Plaintiffs state that State Defendants are joined as indispensable parties. The Court concludes that Plaintiffs' allegations based upon ADEA and ERISA against State Defendants must be dismissed for failure to state a claim upon which relief can be granted.

■ Plaintiffs allege under Title VII a disparate impact case of discrimination. As set forth by the Fifth Circuit,

> The Plaintiff bears the initial burden of establishing a prima facie case of substantial adverse impact by showing that significantly fewer members of plaintiff's class pass the test compared to their counterparts. Once established, the burden shifts to the defendant to show that the test is "job related." The plaintiff can rebut the defendant's evidence by showing that, although the test is job related, alternative selection devices exist which have a comparable business utility, but a lesser adverse impact. *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 562 (5th Cir.1988).

Plaintiffs show statistics indicating that on the March 10, 1986 TECAT black examinees had a pass rate of 80.69% while whites had a 98.98% pass rate, and that on the June 28, 1986 TECAT black examinees had a 73.56% pass rate compared to 88.41% for whites. Statistics from the Texas Education Agency show that the cumulative passing rates for all TECAT examinations to date are: 99.72% for whites and 95.20% for blacks; 99.64% for the above 40 age group and 99.29% for the below 40 age group.

The statistical significance of disparities in numbers is generally evaluated by courts on a case-by-case basis. As a starting point or rule of thumb, it is helpful to refer to the Equal Employment Opportunities Commission Guidelines at 29 C.F.R. 1607.4(D) where it is specified that a selection rate for members of a particular race, sex, or ethnic group will not generally be evidence of adverse impact unless that rate is less than four-fifths of the rate for the group with the highest rate. *See Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 2789, 101 L.Ed.2d 827

(1988); *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 562 (5th Cir.1988). In every statistical comparison filed with the Court by either Plaintiff or Defendant, the pass rate of blacks exceeds four-fifths of the rate of whites (the highest rate group). Likewise, the statistics show pass rates for the above age 40 group either exceed the rate for the below age 40 group or fall well above four-fifths of the pass rate for the younger group. While the "four-fifths rule" need not be dispositive, the Court finds in the pleadings and affidavits before it no statistical disparities that suggest the equivalent of intentional discrimination in the facially neutral TECAT, nor any proof of its discriminatory impact on the employer's work force. *Pouncy v. Prudential Ins. Co. of America*, 668 F.2d 795, 800 (5th Cir.1982).

Plaintiffs have had adequate time for discovery and have failed to make a sufficient showing of an element essential to Plaintiffs' case and on which they would bear the burden of proof at trial. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The Court, therefore, finds that the Motion for Summary Judgment for State Defendants should be GRANTED. It is hereby ORDERED, ADJUDGED, and DECREED that Summary Judgment be in all things GRANTED.

## ON MOTION FOR NEW TRIAL

Came on for consideration Plaintiffs' Motion for New Trial and/or Motion for Reconsideration and Defendants' Response thereto. Plaintiffs complain of the Summary Judgment entered for Defendants on May 3, 1989, which held that Plaintiffs had failed to make a prima facie case of disproportionate impact upon blacks of the legislatively mandated Texas Examination for Current Administrators and Educators (TECAT).

Plaintiffs state on page 2 of their Motion that "the court erred in concluding that

because the state defendants were not Plaintiffs' nominal employer that Plaintiffs failed to state a claim against these Defendants under Title VII...." That statement is incorrect; Summary Judgment was entered for Defendants because Plaintiffs failed to make a prima facie case in their Title VII charge. The Court dismissed Plaintiffs' allegations based upon the Age Discrimination in Employment Act and the Employee Retirement Income Security Act since the Defendants were not Plaintiffs' employers. Plaintiffs have not contested that dismissal.

■ Plaintiffs evidently do not recognize that age discrimination is outside the scope of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e *et seq.* Title VII encompasses race, color, religion, sex, and national origin. Therefore, only Plaintiffs' claim of a disproportionate impact of the TECAT upon black teachers is under consideration.

■ This Court noted in its earlier Opinion that, as a general rule, facially neutral testing procedures are not deemed, under Equal Employment Opportunities Commission Guidelines, to be evidence of adverse, discriminatory impact upon a protected group unless the selection rate for that group is less than four-fifths of the selection rate for the group with the highest selection rate. 29 C.F.R. 1607.4(D) (1987). Plaintiffs accept the threshold analysis of this standard, but propose to apply the standard to the failure rates on the test rather than the selection rates as described in the EEOC Guidelines. Such a proposal is counter to the stated guidelines, statistical reasoning, and is not the law. Plaintiffs state on page 2 of their Motion that the "black fail rate is less than four-fifths of the white fail rate for every age grouping." If the black fail rate is, for example, 1.57 and the white fail rate is .14, the black fail rate is greater than the white fail rate, not less than four-fifths of it. The Court assumes that Plaintiffs' Motion is made in good faith, and that they are confused in their statistical understanding.

Among the statistical comparisons brought before this Court, none show the TECAT selection rate for blacks to be less than four-fifths that of whites. The four-fifths comparison, however, is not dispositive if other factors indicating discriminatory intent can be shown. Plaintiffs bring forward no other factors in their Motion for New Trial for consideration. Plaintiffs do not question the job-relatedness of the TECAT. No issues are raised as to the relevance that basic reading and writing skills bear to public school teaching. Plaintiffs complain that the State Board of Education knew or should have known when it set the cut-off score that black teachers would be adversely impacted.

According to the materials in the record before the Court, the following recommendations were compiled as to a cut-off score for the TECAT.

| Proposing Group: | Reading Section: | Writing Section: |
| --- | --- | --- |
| TECAT Advisory Committee | 36 (standard deviation 13) | 19 |
| Statewide Review | 38 (standard deviation 7.5) | 19 (standard deviation 4.1) |
| Commissioner of Ed./TEA Staff | 40 | 21 |
| State Board of Educ. | 41 | 23 |

The cut-off scores selected by the State Board of Education did not deviate far from the range of recommendations, particularly given the broad standard deviations associated with the recommended scores. Further, the deposition of Nolan Earl Woods, Jr., provided by Plaintiffs, includes a clear description of the reasoning behind

the State Board's selection of scores, including experience with field test data, the projected use of preparatory materials and courses to be offered examinees prior to the test. Plaintiffs offer no facts to support their vague allegation that the State Board should have set lower cut-off scores.

Plaintiffs point to Tables 15 and 17 of the T.E.A. Deposition Exhibit 4, which are estimated performance statistics, in an attempt to show that the State Board knew or should have known that the TECAT cut-off scores would adversely impact black teachers. These tables show that, at any score, the percentage of blacks passing the TECAT would be smaller than the overall pass rate. Thus, no matter what cut-off score had been selected by the State Board, the pass rate for blacks would have been lower than the total pass rate.[1]

■ The Court quotes at length from *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971), because the analysis is directly on point.

"Because they are Negroes, petitioners have long received inferior education in segregated schools.... Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has prescribed.... If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited."

The fact that a facially neutral, job-related test has some disparate impact does not per se constitute a violation of Title VII. "Rather, the employer has the discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 259, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207 (1980).

It is unfortunate that blacks have a pass rate on any exam that is lower, to any degree, than do other groups. The State Board of Education is following a legislative mandate to improve the quality of teaching in public schools so that children in Texas do not receive an inferior education and so that all children in Texas, regardless of race or ethnicity, will have a sound foundation upon which to take the exams necessary to their education and professional lives.[2] The Court is unable to conclude that a disparate impact upon blacks from the TECAT exists that is significant enough to suggest the equivalent of intentional discrimination. It is, therefore,

ORDERED, ADJUDGED, and DECREED the Summary Judgment is AFFIRMED and that Plaintiffs' Motion for New Trial and/or Reconsideration is in all things DENIED.

---

1. The Court has in the records before it the numerical scores for one of the Plaintiffs, which show that had even the lowest recommended cut-off score been applied, Plaintiff would not have passed either part of the TECAT on either occasion that she took it. The Court did not delve into the issue of whether that Plaintiff had a live case or controversy or whether her action should have been dismissed as moot, since Plaintiffs failed to make out a prima facie case.

2. The Court would note that the Texas Supreme Court has held that competency testing as exemplified by the TECAT bears a rational relation to the legitimate state objective of maintaining competent teachers in the public schools. *State v. Project Principle, Inc.*, 724 S.W.2d 387 (Tex. 1987).