38 F.3d 1218
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Gloria LEE, Plaintiff-Appellant,
v.
VISITING NURSE ASSOCIATION OF LOS ANGELES, INC.; Yvette
Luque, Defendants-Appellees.
 No. 93-55522.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 1, 1994.
Decided Oct. 20, 1994.
 
 1
 Before: D.W. NELSON and NOONAN, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Gloria Lee appeals the district court's judgment in favor of her former employer, the Visiting Nurse Association of Los Angeles ("the VNA"). Lee argues that she proved a prima facie case of disparate treatment that was unrebutted by legitimate business reasons, that the district court erred in finding her statistical evidence irrelevant to her disparate treatment claim, and that the disparate impact model is applicable to her case. Lee also contends that the district court improperly struck her request for punitive and compensatory damages and a jury trial. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm the district court's judgment in favor of the VNA.
 
 I. Disparate Treatment
 
 4
 Lee, an African-American woman, was employed at the VNA as Director of Social Services from March 1985 until June 1986. The VNA eliminated her management position and offered her a contract social worker position when a financial crisis led to an emergency reorganization in 1986.[1] In order to prove her first claim of disparate treatment, Lee must establish by a preponderance of the evidence that the VNA's acts were "intentionally discriminatory." McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).
 
 
 5
 Adapting the McDonnell Douglas elements to her prima facie discriminatory discharge case, Lee alleged that 1) she is an African-American; 2) she performed her job well enough to rule out the possibility that she was fired for inadequate job performance;[2] and 3) the VNA "sought a replacement with qualifications similar to hers." Sengupta v. Morrison-Knudsen Co., Inc., 804 F.2d 1072, 1075 (9th Cir.1986). Lee claims that the VNA failed to produce credible reasons for her demotion in rebuttal, and that, therefore, the presumption of discrimination compels a judgment in her favor. However, Lee's reliance on St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742 (1993), is misplaced. The McDonnell Douglas presumption does not, according to the St. Mary's Court, shift the burden of proof. Id. at 2747. The VNA only needed to raise a genuine issue of fact as to whether it discriminated against Lee, Burdine, 450 U.S. at 253, and it sustained this burden of production by offering evidence that business necessity led to Lee's demotion.
 
 
 6
 The record verifies that changes in Medicare reimbursement generated a financial crisis at the VNA in 1986, and the VNA claims that the reorganization was a legitimate business strategy for dealing with that crisis. Lee argues that business necessity actually compelled the VNA to retain her position, but she does not produce sufficient evidence that the VNA's business concerns were a pretext for racial discrimination.
 
 
 7
 The district court found that Lee's responsibilities initially were reassigned to various individuals at the VNA. We have held that there is no adverse inference to be drawn from an employee's discharge in a reduction-in-force case if the position and duties are eliminated. Rose v. Wells Fargo, 902 F.2d 1417, 1421 (9th Cir.1990) (citing Palmer 794 F.2d at 537). Lee must show that the VNA had a continuing need for her services. Sengupta, 804 F.2d at 1075. She points to the recommendations of outside referral services that the VNA retain a supervisor within the Social Services department as evidence that her position was not eliminated. Lee also argues that the VNA promoted a social worker, Bonnie Moore, who assumed Lee's former responsibilities.[3] However, the fact that Lee was replaced gradually over a five year period "substantially weakens" her claim. Simpson v. Midland Ross Corp., 823 F.2d 937, 941 (6th Cir.1987) (in age discrimination case, the fact that employee was not replaced until several months after discharge and the circumstance of a reduction in force due to economic necessity weakens claim of discrimination). A plaintiff must come forward with additional evidence if a replacement is delayed.
 
 
 8
 Lee's circumstantial evidence of racial animus on the part of the VNA includes allegations that she was called a "jerk" during a role-playing session, that she was often ignored at meetings, and that she was insufficiently oriented when she began working at the VNA. The district court found these allegations unpersuasive, and we agree that they do not prove that the VNA or Lee's supervisor, Yvette Luque, harbored any racially discriminatory motivation.
 
 
 9
 Borrowing from disparate impact case law, Lee also argues that it should be relevant that other methods could have been employed to reduce costs at the VNA. Albemarle Paper Co. v. Moody, 422 U.S. 405, 425 (1975), suggests that the existence of reasonable, alternative practices without an undesirable racial effect can be evidence of pretext. (citing McDonnell Douglas, 411 U.S. at 804-805). See also Patterson v. American Tobacco, 535 F.2d 257, 265 (4th Cir.) ("[T]here must be no accepted alternative policies or practices which would better accomplish the business purpose advanced.") (quoting Robinson v. Lorillard Co., 444 F.2d 791, 798 (4th Cir.1971)), cert. denied, 429 U.S. 920 (1976).
 
 
 10
 The district court expressly found that Lee did not establish that the VNA had options other than to eliminate several positions, including Lee's. The VNA claims that they did not offer Moore's job to Lee because: 1) Moore performed clinical work which Lee had said she would not do; 2) the VNA considered it impractical to separate the supervisory duties Moore performed and offer them to Lee on a part-time basis, and they preferred the coordinator to have daily contact with the staff; and 3) it would have been more expensive for the VNA to rehire Lee than it was to provide Moore with an increase in her salary.[4] Although it is possible that the VNA's interests would have been effectively served had Lee been retained as a part-time Coordinator, the district court accepted the VNA's explanation for its preference for Moore. That finding is not clearly erroneous.
 
 
 11
 Lee further contends that the VNA's cost-cutting plan to demote all social workers with less than five years seniority to contract positions was a discriminatory seniority system. Title VII, 42 U.S.C. Sec. 2000e-2(h), protects worker's seniority rights notwithstanding that minority workers will often be hired most recently and hence may be disadvantaged by strict adherence to seniority in determining layoffs and rehires. Int'l Bhd. of Teamsters v. U.S., 431 U.S. 324, 349-353 (1977). Not only is the VNA's decision to reduce untenured social workers to contract status a bona fide seniority system, but it also did not have any significant discriminatory impact.
 
 
 12
 The only additional evidence Lee produced to prove pretext is statistical. The district court found that statistics are relevant in a disparate treatment case to supplement evidence of discriminatory intent, but that the relevant statistics in the case at issue are those relating to the overall impact of the 1986 reorganization of the VNA on African-American employees, including the impact on the representation of African-Americans in the VNA's management ranks. Diaz v. American Telephone and Telegraph, 752 F.2d 1356, 1362-63 (9th Cir.1985) (purpose of statistics is "to provide otherwise unavailable indications of an employer's conscious or unconscious motives"). Lee argues that African-Americans were disproportionately affected by the reorganization because the only two African-Americans who were in "team" management at the VNA were demoted. The VNA produced statistical evidence, however, demonstrating that the percentage of African-American employees affected by the 1986 reorganization was far less than their representation in the VNA work force.
 
 
 13
 The relevant pool for any statistical analysis of Lee's claim includes all of the employees affected by the reorganization. Lee cites Sengupta, 804 F.2d at 1076, for the proposition that "courts must sometimes rely on statistics derived from small sample groups." The Sengupta court, however, was referring to small companies. The VNA is not a small company, and the statistics for the whole pool of employees are available. Even if the court considers only management employees, but includes middle management, the statistics do not show a disparate impact on African-Americans.[5]
 
 
 14
 The district court found that the statistics from the highest level of management, which Lee relied on, were derived from a sample size too small to give rise to a strong inference of discrimination. We conclude that the district court did not err in discounting the statistical evidence derived from the pool of 20 employees. See Sengupta, 804 F.2d at 1076 (the problem with small labor pools is that slight changes in the data can drastically alter appearances); Shutt v. Sandoz, 944 F.2d 1431, 1433 (9th Cir.1991) (group of 11 employees too small to establish a statistical pattern that could conclusively be identified as discriminatory), cert. denied, 112 S.Ct. 1477 (1992).[6]
 
 
 15
 Even if we take Lee's statistical evidence as accurate and relevant to prove her claim of disparate treatment based on race, the statistics are subject to rebuttal like any other evidence. Anderson v. Douglas & Lomason Co., 1994 WL 245615 at * 4 (5th Cir.1994) (citing 431 U.S. at 340). The VNA has the opportunity to provide a non-discriminatory reason for the apparently discriminatory result. Id. Joyce Sampson, the other African-American who was demoted from the highest level of management, was offered a lower level position with no decrease in salary. She was demoted because her position was merged with that of another area director who had far more experience. Sampson was, therefore, demoted for legitimate non-discriminatory reasons. Lee's reliance on the treatment of Sampson to prove disparate treatment offers little support to her claim.
 
 
 16
 The district court found that Lee had failed to rebut the VNA's evidence "that they faced significant and sudden financial difficulties in June of 1986, and that their decision to eliminate [Lee's] position--and many others--was a good faith exercise of business judgment motivated by legitimate business considerations." Given that Lee's statistical evidence does not support a claim of discriminatory treatment, and that the record contains no indication of racial animus in the VNA's reorganization process, we do not find the district court's determination that Lee failed to prove disparate treatment clearly erroneous.
 
 II. Disparate Impact
 
 17
 The district court determined that the disparate impact model does not apply to Lee's case. The district court incorrectly stated that a disparate impact claim is not appropriate to a case of a one-time reduction in work force. See Council 31, American Federation of State, County & Municipal Employees v. Ward, 978 F.2d 373, 377 (7th Cir.1992) (holding that when members of a protected class can show significant disparities stemming from a single decision, that decision should be actionable). The court correctly concluded, however, that Lee could not allege the elements of a disparate impact claim. Lee's burden in establishing a prima facie case of disparate impact goes beyond the need to show that there are statistical disparities in the employer's work force. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989). To establish a prima facie case Lee must identify 1) an identifiable, facially neutral personnel policy or practice; 2) a disparate effect on members of a protected class; and 3) a causal connection between the two. Rose v. Wells Fargo, 902 F.2d at 1424 (citing Watson v. Fort Worth Bank & Trust, 487 U.S. 977 (1988)).
 
 
 18
 Lee failed to "isolate and identify the specific employment practices allegedly responsible for any observed statistical disparities." Watson, 487 U.S. at 994. See also Pouncy v. Prudential Insurance Co. of America, 668 F.2d 795, 800 (5th Cir.1982) (disparate impact model applies only where an employer has instituted a specific procedure, usually a selection criterion for employment, that can be shown to have a causal connection to a class based imbalance in the work force). Disparate impact analysis can be used to challenge an employer's subjective criteria for employment decisions as well. Watson, 487 U.S. at 989-991. Lee argues that the VNA made a subjective decision to utilize an industry employment practice.
 
 
 19
 Even if we accept that the reorganization of the VNA constitutes a specific employment practice for purposes of a disparate impact claim, Lee did not allege a statistical disparity that is "sufficiently substantial as to raise an inference of causation." Watson, 487 U.S. at 995. Her evidence is not probative because the data is incomplete and does not involve appropriate comparisons. Id. at 996. In Lee's case, the appropriate statistics are those comparing the racial composition of the employees affected by the reorganization with the composition of the entire labor force at the VNA. Wards Cove, 490 U.S. at 650. Those statistics do not support a claim of disparate impact.
 
 
 20
 Moreover, even if Lee did establish a prima facie case of disparate impact, the VNA demonstrated a "business justification" for the challenged reorganization. Wards Cove, 490 U.S. at 658; Gay, 649 F.2d at 537. Sampson clearly was demoted for the legitimate reason that her position was merged into one held by an employee with more experience, and the evidence is also sufficient to support the finding that Lee's position was eliminated out of business necessity. As in a disparate treatment claim, Lee retains the ultimate burden of persuasion. Wards Cove, 490 U.S. at 659 ("The ultimate burden of proving that discrimination against a protected group has been caused by a specific employment practice remains with the plaintiff at all times.") (emphasis in original). Lee, therefore, could have prevailed on a disparate impact claim only by demonstrating that business necessity was a pretext for discrimination, or that alternative means, consistent with the VNA's legitimate business interest, would have been less discriminatory. Albemarle Paper Co. V. Moody, 422 U.S. 405, 425 (1975); Dothard v. Rawlinson, 433 U.S. 321, 329 (1977). We have already concluded that Lee did not produce sufficient evidence that the VNA's explanation was pretextual. The district court did not err in finding that the disparate impact model did not apply to Lee's claim.
 
 
 21
 III. Compensatory and Punitive Damages and a Jury Trial
 
 
 22
 The Supreme Court's decision in Landgraf v. USI Film Products, 114 S.Ct. 1483 (1994), forecloses Lee's claim that she is entitled to compensatory and punitive damages and a jury trial. In Landgraf, the Court held that Sec. 102, which Lee relies on, does not apply to a Title VII case pending when the 1991 Act was enacted. Id. at 1488, 1508. The Civil Rights Act of 1991 was enacted after Lee filed her initial complaint, and she therefore is not entitled to amend her complaint to take advantage of these provisions.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The restructuring of the VNA affected individuals throughout the 900 employee organization. At the highest level of management, Lee and one other African-American employee were demoted. In middle management, two Caucasian employees and one Asian employee were demoted or reduced to part-time positions. The four African-Americans in middle management were not affected by the reorganization
 
 
 [2]
 The record supports Lee's assertion that her work at the VNA was commendable
 
 
 [3]
 Moore claims that she continued to spend half of her time on clinical social work, in addition to administrative duties, until she assumed Lee's former position in 1991, nearly five year's after Lee's discharge
 
 
 [4]
 There is no evidence to support Lee's allegation that her supervisors knew that she was willing to perform home visits, or that she would have accepted the same salary as Moore
 
 
 [5]
 We note, however, that a racially balanced work force cannot immunize an employer against charges of discrimination in individual cases. Furnco, 438 U.S. 567, 579; Wards Cove Packing Co. v. Atonion, 490 U.S. 642, 655-57 (1989); Connecticut v. Teal, 457 U.S. 440, 450 (1982)
 
 
 [6]
 The EEOC concluded in 1979 that statistics from small applicant pools (30 employees, for example) do not warrant a determination of adverse impact. 44 Fed.Reg. 11,999. It follows that statistics on the number of employees who were demoted from the eligible pool of 20 "team management" employees at the VNA do not warrant a determination of discrimination either