862 F.2d 313
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Paulette F. CAMPBELL, Telma D. Murray, Plaintiffs-Appellants,
v.
McLEAN TRUCKING COMPANY, Defendant-Appellee.
 No. 86-3956.
 United States Court of Appeals, Fourth Circuit.
 Argued July 27, 1988.
Decided Nov. 3, 1988.
Rehearing and Rehearing In Banc Denied Dec. 7, 1988.
 
 Harold Lillard Kennedy, III (Kennedy, Kennedy, Kennedy and Kennedy on brief) for appellants.
 Harry Lee Davis, Jr. (George E. Doughton, Jr., Hutchins, Tyndall, Doughton & Moore on brief) for appellee.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is a discrimination case filed jointly by the two plaintiffs, Paulette F. Campbell and Telma D. Murray, against their former employer, McLean Trucking Company (McLean). The plaintiffs alleged discrimination in promotions and lay-offs under Section 1981 and Title VII, 42 U.S.C. The district court granted injunctive relief on the promotion discrimination cause of action but denied back pay; it also denied the claim of discriminatory lay-offs. The district court made an award of attorney's fees. The plaintiffs have appealed the denial of back pay and the denial of their lay-off claim. We affirm but not entirely for the reasons assigned by the district court.
 
 I.
 
 2
 The plaintiffs, who are black, were employed by McLean initially as junior clerks--Campbell, on June 8, 1977, and Murray, on September 24, 1978. They were both laid off as a part of a series of lay-offs by McLean in May, 1982.[1] At the time of the lay-off Campbell, by reason of various raises, was earning $7.80 per hour, and Murray was earning $7.40 per hour. Both filed separate claims of discrimination in promotion and lay-offs with the Equal Employment Opportunity Commission (EEOC) on October 11, 1982.[2] These complaints, according to the undisputed allegations of McLean, were dismissed in separate notices dated August, 1983. In such notices of dismissal, the EEOC advised the plaintiffs in both cases that
 
 
 3
 Your charge was dismissed for the following reasons: No reasonable cause was found to believe that the allegations made in your charge are true, as indicated in the attached determination.
 
 
 4
 Some months after the receipt of these notices, the plaintiffs filed within time their joint action on November 28, 1983.
 
 
 5
 The plaintiffs in their one complaint stated separately causes of action on behalf of each plaintiff for discriminatory lay-offs under Title VII (First Cause of Action) and a cause of action of discriminatory promotions (Second Cause of Action) under Section 1981, 42 U.S.C. The two causes of action--that of the plaintiff Campbell and that of the plaintiff Murray--contained substantially the same critical allegation save that in the promotion discrimination cause of action, Section 1981 was referred to as the basis for relief, and in the lay-off cause of action Title VII was referred to as its basis. This allegation was:
 
 
 6
 Within the last three years, vacancies for higher level jobs have occurred for which the plaintiff was qualified, but less qualified white employees have been promoted into or assigned to such jobs. That the failure of the defendant to assign or promote the plaintiff to said jobs constituted discrimination in promotion and job assignment based on her race in violation of [either Title VII in first cause of action or Section 1981, 42 U.S.C. in second cause of action].
 
 
 7
 Later, the plaintiffs amended this critical allegation in their second cause of action of the Campbell claim charging discriminatory promotions by substituting for the sentence beginning "[w]ithin the last three years" and continuing to the end of the paragraph the following:
 
 
 8
 During her period of employment, from June 1977 to May 21, 1982, vacancies for higher level jobs have occurred for which the plaintiff was qualified, but less qualified white employees have been promoted into or assigned to said jobs. That the failure of the defendant to assign or promote the plaintiff to said jobs constituted discrimination in promotion and job assignment based on her race in violation of 42 U.S.C. Section 1981, and said promotion discrimination has been continuous during said period of her employment.
 
 
 9
 It included a similar amendment of paragraph 12 in the second cause of action of the Murray promotion claim:
 
 
 10
 During her period of employment, from September 1978 to May 6, 1982, vacancies for higher level jobs have occurred for which the plaintiff was qualified, but less qualified white employees have been promoted into or assigned to said jobs. That the failure of the defendant to assign or promote the plaintiff to said jobs constituted discrimination in promotion and job assignment based on her race in violation of 42 U.S.C. Section 1981, and said promotion discrimination has been continuous during said period of her employment.
 
 
 11
 The cause thereafter came on for trial to the Court which, in disposing of the case, filed two opinions. The district court discussed first in its opinions the second claim, (discrimination in promotions) and next the lay-off claim. We shall do likewise.
 
 II.
 
 12
 The district court found that the plaintiffs had made out a prima facie case of discrimination in promotions and that the defendant had "simply failed to offer any evidence at trial responsive to plaintiffs' prima facie promotion claims and thus must suffer the consequences of its failure." Based on this, it granted judgment for plaintiffs on their denial of promotion claims. In reaching this conclusion the district court declared that both plaintiffs had established that they were "black and [had] been denied promotions on successive occasions for which they were better qualified than the white employees who received them. At least one of these episodes occurred with respect to each plaintiff within the three years prior to filing this lawsuit." It identified the two vacancies, which occurred within the limitation period, to be one filled by Ruth Bridges on December 1, 1981 and one filled by Lucinda Gail Flynn on March 2, 1981. The district court rested its conclusions on two findings, the first based on McLean's method of filling vacancies and of making promotions and the second on a finding of actual discrimination by promoting white employees for vacancies for which the plaintiffs were better qualified than the whites selected.
 
 
 13
 The district court found first that the defendant's method of filling vacancies was one "fraught with the potential for denying equal employment opportunities." In explication of this finding it stated that the defendant had "no written guidelines to determine the suitability of an employee for promotion. There [was] no bid system for vacancies, and vacancies [were] not posted ... There [was] no procedure for employees, either at the time of hiring or thereafter, to inform management of their interest in particular jobs or in promotion." Moreover, it found that "responsibility for their promotion rested with the heads of their respective departments, who in turn relied upon recommendations for promotions from the employees' direct supervisors. All of the plaintiffs' department heads and supervisors were white."[4] Such was the system which the district court found was "fraught" with potential for discrimination.
 
 
 14
 However, the fact that promotion decisions were concentrated in the hands of predominantly white supervisors and that the standards used by such supervisors were imprecise and subjective, while relevant, normally will not of itself support a finding of prima facie discrimination in promotions unless it is supported by some showing of a negative disparity in promotion decisions for blacks. Metrocare v. Washington Metro. Area Transit Auth., 679 F.2d 922, 929 (D.C.Cir.1982). Ordinarily this additional showing is made by the introduction of appropriate statistical analyses. The plaintiffs in this case did offer statistical evidence but only on their lay-off claims, not on their lack-of-promotion claims. They relied instead on what they asserted were specific instances of discriminatory promotions suffered by them.[5] We accordingly proceed to consider these alleged instances of promotion discrimination first, as charged by the plaintiffs and then as found by the district court in its findings in support of plaintiffs' claim of promotion discrimination.
 
 
 15
 In its opinion, the district court reviewed all the promotions made by McLean between 1978 (the year when the plaintiff Campbell was employed) and 1981 (the year when most of the lay-offs occurred) among the hourly-paid employees, as divided between black and white employees. This review was not confined to promotions which the plaintiffs claimed to have been discriminatory nor was it confined to promotions within the statutory limitations period even though the district court recognized that evidence of promotions that predated the statutory limitations period was only "background information" and would not support a finding of redressable discrimination. Woodard v. Lehman, 717 F.2d 909, 915 (4th Cir.1983). The district court seems to have reviewed every promotion, however, small, throughout the four-year period, and, if it found that one of the plaintiffs in its judgment was qualified for the job made a judgment whether the one promoted was less qualified than one of the plaintiffs, basing its conclusion of discrimination on that fact, without regard to whether the plaintiffs wanted that promotion or had claimed they were discriminated against by that promotion. There were, the court found, six promotions made during this four-year period, where the plaintiffs, though said by the court to have been better qualified than the white employee selected, had been discriminated against. Only two of these promotions found by the district court to have been discriminatory were made within the limitations period (Ruth Bridges and Lucinda Gail Flynn). In addition, it found that there were three instances in which the plaintiffs had not been considered for the promotion, because they were as well qualified as the white employees selected, this despite the fact that it is well established that it is not sufficient to establish a discrimination in promotion that the complaining employee was as well qualified, but it is to establish that the complaining employee was better qualified than the person selected. Gairola v. Com. of Va. Dept. of General Services, 753 F.2d 1281, 1287 (4th Cir.1985). In its findings in this connection, the court identified each promotion it found discriminatory, giving the date and character of the promotion made and the white employee selected. It did not, though, give any explanation or discussion of how it arrived at its determination that the plaintiffs were better qualified than the persons selected for the promotions beyond this conclusory statement:
 
 
 16
 The court's findings in this case regarding the relative qualifications of Plaintiffs are based on its own detailed examination and comparison of each personnel file introduced into evidence. No such detailed analysis was submitted by the parties.
 
 
 17
 The personnel files, to which the district court referred and on which it relied for its finding of discriminatory promotion, included the employees' employment applications of the plaintiffs and those promoted, stating their experience and qualifications and their record of employment in the job the employees had during McLean employment. The promotions identified by the district court as violations of the plaintiffs' promotion rights ranged from jobs as "secretary-stenographer" to key-punch operator, mail clerk operator, and computer operator. The district court purported to find that the plaintiffs were more qualified to fill all of these positions than the person selected, and such positions were positions that the plaintiffs would reasonably have sought had they known of the vacancy and been given the opportunity to compete for the job. It did this, however, even though in most instances the plaintiffs had no experience in the job to be filled and, at least in the case of Bridges and Flynn, the employees selected for promotion had had long experience in the very job involved in the promotion. As we said, though, it set forth no specific facts or circumstances, no actual comparison of the work experience or records of the employees selected for the promotion as compared with that of the plaintiffs on which it based its findings of the plaintiffs' superior qualifications.
 
 
 18
 Three of the positions which the district court found the plaintiffs were better qualified than the person selected were positions as computer operators. In their statement of qualifications and experience, as listed in her application for employment, Ms. Campbell listed a "key-punch machine" as the extent of her experience in the operations of any form of mechanical equipment, and Ms. Murray's listed in her application a "calculator, touch, computer," as the extent of her experience. On the other hand, those employed as computer operators during 1979 and said by the district court to have been promoted improperly over the plaintiffs, were Timothy Swicegood, whose experience at time of employment covered operating "IBM-370 ...," James Norman, whose resume of machine experience covered operating "10 Key Adding Machine, Full Key Adding Machine, Duplicating Machine, Electronic Calculator" and Stewart Presley, who said in his statement of experience: "I am able to operate IBM 1419 Magnetic Character Reader, IBM 3747 Data Converter and IBM 360 Computer System." The plaintiffs had no comparable experience to these employees. Two of the other positions listed by the district court involved key-punch operators, and one "secretary-stenographer." Both of the employees promoted in the key-punch department were already long-time key-punch operators who were merely advanced in their classification in the key-punch department. Neither Campbell nor Murray had any experience as a key-punch operator at McLean's. As we later point out, Ms. Murray was said by her expert witness on job qualifications to be qualified as a key punch operator but only "after training ". Neither Campbell nor Murray had any experience as a secretary; neither one had any shorthand proficiency; and their typing was clearly inadequate (Murray's was 30 words per minute by her own reckoning, and Campbell's 50 words per minute, both below required standard). It is difficult to find from this evidence that the plaintiffs were qualified for the jobs which the district court found they were qualified to fill and it seems indisputably clear that all six of the persons said by the district court to have been improperly promoted over the plaintiffs were not only as well qualified but actually were by far better qualified than either of the plaintiffs.
 
 
 19
 As a matter of fact, the plaintiffs were asked both in their depositions and as a witness at trial to identify the employees who had received jobs with less qualifications for the vacancies in question than they. In their depositions the plaintiffs were hard pressed to supply any names in response to this inquiry but at the trial some months later they came up with a number of names. It is significant that neither plaintiff in her testimony listed the Bridges or Flynn promotions as ones where they had been discriminated against. Further, in its proposed findings of fact, as submitted to the district court after trial, the plaintiffs specifically identified the promotions in connection with which they had suffered discrimination; the promotions of Bridges and Flynn again do not appear on such list.
 
 
 20
 Ms. Murray did identify one promotion she had sought unsuccessfully during the 1978-81 period. There had arisen a vacancy as an accounts coordinator. Murray, as well as others in the unit, knew of the vacancies. Though Murray had only been employed at McLean less than a year and had no experience as an accounts coordinator, she applied for the job. The supervisor told her that he had a number of applicants for the job, that he was going to try to be fair, but that seniority would be a big factor in the selection. Later, Betty Stinnett, white, was given the job. In her direct testimony, Murray indicated she had greater seniority than Stinnett and for that reason she should have been given the job. However, on cross-examination, she receded from this, since the records showed that Stinnett had been employed by McLean since 1962 and had worked in practically every unit in the clerical department. In the face of this compelling record, Murray said she should have been given a chance to get the same experience as Stinnett had. This would have been a hard thing to accomplish, since Ms. Stinnett had almost eighteen years' experience and seniority compared to Ms. Murray's less than a year's experience and seniority. It is also interesting that one employee was promoted to an accounts coordinator after Stinnett, i.e., Sharon Dobbins, a black. None of these facts were commented on by the district court. There was also some reference to Linda Smith, a white, who was employed as a secretary-stenographer, though it is not clear that the plaintiffs were actually claiming discrimination in this case. Smith could both type and take shorthand. She also had five years' experience as a secretary. The plaintiffs, by their admission, had less proficiency by far at typing than Smith, no proficiency in shorthand and no experience as a secretary. It would be impossible on this undisputed record to find that the plaintiffs were better qualified than Linda Smith for employment as a secretary-stenographer.
 
 
 21
 Even more significant, the district court never adverted to the testimony of Ms. Richardson, who had been Murray's supervisor at McLean for two years. Ms. Richardson had a college degree in managerial psychology. She also had reason for unfriendliness toward McLain. She had been forcibly terminated from McLean prior to her testimony. She was called, by the plaintiffs, presumably because of her friendliness toward Murray, as an expert witness by the plaintiffs to testify on the job qualifications primarily of Murray and by relation of Campbell, since the qualifications of Campbell and Murray were so similar that her testimony would also be applicable to Ms. Campbell's qualifications. Ms. Richardson was asked directly by plaintiffs' counsel whether Ms. Murray was qualified for employment as a computer operator. To understand Ms. Richardson's answer, it is necessary to note that Ms. Murray had stated on her application form that she had had experience as a CRT operator. Ms. Richardson said that "when you say a computer operator, that's the person who was actually operating the big system, and that would require a lot of education and training. A CRT operator is different than a computer operator." When pressed further by plaintiffs' counsel, Ms. Richardson testified:
 
 
 22
 Well, like I said, a computer operator is different from a CRT operator. Telma [Murray] probably did not have the experience or the job knowledge at the point that she was apt to become a computer operator.
 
 
 23
 Later, counsel pursued this line of questioning by asking Ms. Richardson whether she knew what kind of computer experience Ms. Murray had had at her employment at L'eggs Products. Ms. Richardson responded: "I know she used CRT. CRT's are just the terminals themselves. They are computer recording terminals." It would seem obvious that the plaintiffs' qualifications for a computer operator were far less than those of the persons given the computer positions and we are perplexed without further explanation by the bare conclusory statement of the court that the district court found these plaintiffs either "superior" or even "equal" to the persons who were employed as computer operators.
 
 
 24
 As a matter of fact, Ms. Richardson listed only a few jobs for which she found Ms. Murray at least qualified. Thus, she summarized Ms. Murray's qualifications:
 
 
 25
 Okay, obviously she would be qualified to train as a switchboard operator. I think Telma and I had a discussion about her going to be trained as a rate clerk and I suggested that she take some schooling at Forsyth to become a rate clerk. I think she was signed up for that at one time. I am not sure what her progress was. Telma was trained as a CRT operator in her department. She would have soon become a junior accountant by her number of years with the company. The account coordinator--like I said, I am not very familiar with that. I worked with those people, but that was not directly under my supervision, but I do know what an account coordinator does. (Italics added)
 
 
 26
 There were no switchboard vacancies listed either by the district court or by the plaintiffs. Unquestionably, the plaintiffs were not qualified as a rate clerk. When asked expressly whether Murray was qualified as "a key-punch operator," she replied, "[w]ith the proper training, yes." While Murray might have qualified as a CRT operator or key-punch operator "after training" (to use Ms. Richardson's language), she was not presently qualified and present qualification is the test.
 
 
 27
 Such is the record of promotions which the district court said sustained its finding of discrimination in promotion by McLean.
 
 
 28
 The district court recognized that, in a discriminatory promotion claim, it is essential, both in establishing a prima facie case and in a determination after trial on the merits, that the plaintiffs show that they were better qualified for the promotion in question than the white selected. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258-89 (1981); Gairola v. Com. of Va. Dept. of General Services, 753 F.2d 1281, 1287 (4th Cir.1985); Cuthbertson v. Biggers Bros. Inc., 702 F.2d 454, 465 (4th Cir. en banc 1983); EEOC v. Federal Reserve Bank, 698 F.2d 633, 672 (4th Cir.1983); Wright v. National Archives & Records Service, 609 F.2d 702, 714 (4th Cir. en banc 1979).[6] In all the promotions identified by the plaintiffs as cases in which they had suffered discrimination, there was no evidence in the record before us which would show that either of the plaintiffs was better qualified than the person selected. Beyond this, it is important to observe that under any view there were only two promotions that could be considered to support the plaintiffs' claim of discrimination in promotions. These promotions are those of Ruth Bridges and Lucinda Gail Flynn. This is so because these are the sole promotions within the statutory limitations period. See Korneqay v. Burlington Industries, 803 F.2d 787, 788 (4th Cir.1986); Woodard v. Lehman, supra, 717 F.2d at 915. All other promotions were within the "pre-limitations period" and any pre-statutory limitations period ones are to be considered, as the district court said, "only as significant background evidence." The Bridges and Flynn promotions relate to two vacancies neither of which was identified by the plaintiffs as a vacancy in which either of them was interested or in which they claimed discrimination. Further, as we have already noted, the plaintiffs submitted proposed findings of fact and conclusions of law after the termination of the evidence. In these findings of fact, the plaintiffs identified specially the promotions in connection with which they charged they had suffered discrimination. Neither the promotion of Ruth Bridges nor that of Lucinda Gail Flynn was included by the plaintiffs among promotions in which they suffered a discrimination as a result. And the reason was obvious. These promotions were low grade advances in which, for instance, Ruth Bridges who had for years been a key-punch operator was elevated to a "key-punch operator-A." Neither advancement would have given the plaintiffs a pay-increase, improved their lay-off rights, or offered them a better opporunity. Neither of the plaintiffs had been employed or had any experience at McLean in the two departments where Bridges and Flynn worked.
 
 
 29
 Since Bridges and Flynn were the only possible promotions that could sustain the plaintiffs' action, and there was manifestly no basis for a finding of discrimination in connection with either, it is easy to understand why the EEOC dismissed the claims of both plaintiffs, finding in each instance that there was "[n]o reasonable cause to believe that the allegations [of discrimination] made in your charge are true...." This conclusion of the EEOC is amply supported by the record and there is no substantial evidence of discrimination in promotion in this record.
 
 
 30
 However, the defendant has not appealed the holding of promotion discrimination by the district court, presumably because the district court denied any claim for back pay and the financial condition of the defendant [leading as it did to later bankruptcy] made an injunction nugatory. The plaintiffs, however, have appealed the denial of back pay, not, as we understand it, because of any discrimination in the Bridges and Flynn cases, but because the earlier promotions, which, though barred normally by the statute of limitations, were justiciable in their argument under the theory of "continuing violation." We turn accordingly to this contention of the plaintiffs.
 
 
 31
 The plaintiffs contend that the district court erred in failing to consider back pay in connection with all failures to promote which occurred more than three years before their suit was filed. They assert that under the continuing violation rule followed in promotion cases under Title VII this would have been proper. The district court dismissed the application of the continuing violation rule in this case for this reason:
 
 
 32
 Plaintiffs have not alleged in their complaint nor argued a continuing violation theory based on failure to promote at any time during their employment by McLean, although the court has found at least one discrete act of discrimination against each Plaintiff within the limitations period. Therefore, the court has considered the prelimitations period vacancies included in nn. 4-7, ... only as significant background evidence.
 
 
 33
 We agree with the district court that in their original complaint the plaintiffs did not allege a continuing violation claim. In their amended complaint, though, they did allege such a claim; indeed, the purpose of the amended complaint was to add such a claim. Although the plaintiffs had amended their complaint so that it could not be said that they had not alleged facts supporting a "continuing violation" claim, the district court refused to consider the claim because the plaintiffs had effectively abandoned such claim during trial. Without determining the correctness of this decision of the district court, we think the dismissal of the claim is required.
 
 
 34
 Under our decision, an essential predicate for a finding of a "continuing violation," enabling a person in a Title VII action to go back of the statutory period is proof of at least one discriminatory violation within the statutory limitations period. As we said in Woodard v. Lehman, supra, 717 F.2d at 915, "[i]t is only when an actual violation has occurred within that requisite time period that under any possible circumstances the theory of continuing violation is sustainable." There was no "actual violation" in the promotions of both Bridges or Flynn "within that requisite time period", and, therefore, no occasion for the district court to consider the continuing violation rule in this case.
 
 
 35
 We, therefore, affirm the district court's ruling on this aspect of the case, but for reasons different from those assigned by the district court.
 
 III.
 
 36
 The charge of discrimination in the selection of employees for lay-offs, the plaintiffs' other ground of appeal, was dismissed by the district court. The lay-offs were admittedly the result of devastating losses suffered by McLean in the period from 1980 to 1982. Except for a cadre of employees, seniority was the criteria used in making the selection for lay-offs among the hourly-paid employees. The plaintiffs have pointed out no deviations from this seniority principle save for a tax accountant position, a rate clerk, eight computer operators, a stenographer secretary and a messenger, which constituted the group exempted from the lay-offs. There was not a position in this group for which either plaintiff had shown that she was qualified. They had not suffered, therefore, discrimination because these few positions had been excepted from the lay-off program.
 
 
 37
 The plaintiffs, however, sought to impeach the fairness of the seniority system of lay-offs by claiming that whites were favored over blacks in the lay-offs. They offered no direct evidence of any such favoritism but sought to use a statistical study to justify their claim. The study had as its basic assumption a workforce consisting of all salaried as well as hourly-paid employees. McLean questioned this "universe," claiming that only hourly-paid employees--which was the class in which the plaintiffs fell--should have been included. The district court found the objection well taken. The salaried employees, a classification that includes all the executive officers, supervisors and department heads, are properly differentiated from the hourly-paid employees. After all, you can reduce the number of your clerks without shutting down the operation but you can't lay off the president and supervisors if you want to continue the business. Robinson v. Polaroid Corp., 567 F.Supp. 192 (D.Mass.1983), aff'd, 732 F.2d 1010 (1st Cir.1984). The ruling of the district court to disregard the use of a statistical computation based on such a "universe" is not unreasonable and, therefore, will be affirmed. Even if this were not so, the plaintiffs could not secure relief on their lay-off claim since the only jobs not subjected to the seniority criteria in lay-offs were jobs for which the plaintiffs were not qualified.
 
 CONCLUSION
 
 38
 We affirm the judgment of the district court, though not in some instances on the reasons assigned by the district court.
 
 
 39
 AFFIRMED.
 
 
 
 [1]
 McLean suffered severe losses in 1981 and 1982 and the lay-offs were admittedly the result of the company's financial reverses
 
 
 [2]
 The claims filed with the EEOC are not in the record, and the court has been unable to secure them
 
 
 [3]
 This notice of the EEOC is not included in the record filed by the parties herein and inquiry of the district court has not resulted in the discovery of the dismissal notices. The EEOC states its records for the years in which the notices were issued are no longer available. Accordingly, we are unable to review the actual reasons assigned by the EEOC for its dismissal of the plaintiffs' complaints, only that the EEOC found the complaints and charges were without merit
 
 
 [4]
 The district court had overlooked that the plaintiff Campbell had in her testimony identified at least one supervisor who was black
 
 
 [5]
 This is a discriminatory treatment case brought by the plaintiffs individually and not as a class suit. The plaintiffs so designated it: It concerns discrimination in promotion of the plaintiffs
 
 
 [6]
 In Wright, we said:
 The McDonnell Douglas formula for proof of a prima facie case, as adapted to failure to promote, would require proof (1) that Wright belonged to a racial minority; (2) that he sought and was qualified for promotion to a position to which promotions were being offered to persons of his qualifications by his employer; (3) that despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained available by promotion to others of his qualifications.