**Samuel KARLIN, Plaintiff,**

v.

**STONE & WEBSTER ENGINEERING CORPORATION, Defendant.**

**Fayek BOTROS, Plaintiff,**

v.

**STONE & WEBSTER ENGINEERING CORPORATION** and Association of Engineers, Architects & Draftsmen, Local 105, International Federation of Professional and Technical Engineers, A.F.L.–C.I.O., **Defendants.**

Civ. A. Nos. 88–201–Z, 88–0612–Z.

United States District Court, D. Massachusetts.

April 14, 1989.

David J. Kerman, Jeffrey H. May, Ropes & Gray, Boston, Mass., for Stone & Webster.

Robert M. Schwartz, Feinberg & Feld, Boston, Mass., for Local 105.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiffs Samuel Karlin and Fayek Botros brought these actions in Massachusetts state court alleging that defendant Stone & Webster Engineering Corp. ("the Company" or "Stone & Webster") willfully discharged them from its employment and failed to rehire them because of their respective ages and in violation of a collective bargaining agreement between the Company and defendant Local 105 ("the Union"). Stone & Webster removed the case to this Court pursuant to 28 U.S.C. § 1441 (1982). Botros and Karlin seek recovery from the Company under the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), (c) (1982) ("the Age Discrimination Act"), and the Massachusetts Discrimination Act, Mass.Gen.Law Ann. ch. 151B, §§ 4, 9 (West 1982 & Supp.1989). They also allege that the Union breached its duty of fair representation owed the plaintiffs under section 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185 (1982), although only Botros names the Union as a defendant. Both defendants have moved for summary judgment.

## I. AGE DISCRIMINATION

Plaintiffs, both senior designers and members of the Union, were two of some 150 designers, senior designers, and lead designers laid off by the Company in May, 1987. The layoff was based on seniority and was not contested by the Union. A short time later, the Company began rehiring some of the laid-off individuals to work as non-Union engineers. Plaintiffs assert that the rehiring process discriminated against them on the basis of age.

■ Plaintiffs do not seek to establish their age discrimination claim based on disparate treatment but rather through a dis-

Paul A. Manoff, Boston, Mass., for plaintiffs.

parate impact analysis. To establish a prima facie case on that theory, plaintiffs must first identify the facially neutral employment practice they challenge. *Watson v. Fort Worth Bank and Trust,* — U.S. ——, 108 S.Ct. 2777, 2788, 101 L.Ed.2d 827 (1988).[1] They must then demonstrate the existence of statistical disparities in the employer's work force that result, albeit unintentionally, from the use of the challenged practice. *Id.* The statistical evidence must be "sufficient to show that the practice in question has caused the exclusion of applicants for jobs ... because of their membership in a protected group." *Id.* 108 S.Ct. at 2789. Such evidence must be "sufficiently substantial that [it] raise[s] ... an inference of causation." *Id.* Under First Circuit case law, Karlin and Botros must be able to show that the challenged employment practice, independent of other factors, caused a disproportionate number of older employees not to be rehired. *Robinson v. Polaroid Corp.,* 732 F.2d 1010, 1016 (1st Cir.1984).

■ Stone & Webster first asserts that plaintiffs have failed to identify the challenged employment practice responsible for the alleged discriminatory impact. But it is clear that plaintiffs challenge the use of the Order of Value rankings established by the Company.[2] Defendant next asserts that plaintiffs' statistical evidence is insufficient to prove that Stone & Webster's use of the Order of Value caused the disparate impact that plaintiffs allege. Plaintiffs' statistics show that a significantly lower proportion of laid-off persons over 50 were rehired as compared to the proportion of such persons under 50. In contrast, defendant contends, based on data submitted in answer to plaintiffs' interrogatories, that the proportion of laid-off senior designers and designers at least 40 years of age who were rehired is virtually identical to the proportion at least 40 years of age prior to the layoff.[3] More important, however, plaintiffs' own statistical study concludes that although a high degree of "association" was found between an employee's age and his or her rank in the Order of Value, "causation cannot be proved with this type of data." Thus, even though plaintiffs' statistician has shown an inverse correlation between age and rank in the Order of Value,[4] she admits that this correlation is insufficient to prove that the Company ranks its employees on the basis of age. She states that only a detailed study of the Company's employee review and rating procedures could establish that ranking is based on age.

1. In *Watson,* the Court considered whether a subjective or discretionary employment practice was subject to a disparate impact analysis. 108 S.Ct. at 2783. In ruling on that issue, the Court outlined the elements of a plaintiff's case under the disparate impact approach. All eight participating Justices concurred in the judgment but only four Justices joined in that portion of the opinion discussing the elements of a prima facie case. However, those Justices who did not join in that portion of the plurality opinion discussing the prima facie case disagreed not about the elements of a prima facie case but only about the allocation of the burden of proving the "business necessity" of a challenged employment selection process, *id.* at 2795 (Blackmun, J., concurring), 2797 (Stevens, J., concurring). If *Watson* is rejected as guiding precedent on the elements of a prima facie case, the First Circuit has nonetheless held that plaintiffs "must show a causal connection between the application of the criterion in question and an alleged discriminatory impact on the protected class." *Robinson v. Polaroid Corp.,* 732 F.2d 1010, 1016 (1st Cir.1984).

2. The Order of Value is an evaluation process used by Stone & Webster to assess the overall performance and value of its employees. It is derived from an assessment of numerous factors including an employee's experience, educational background, expertise in current disciplines, job performance, the Company's current workload and its estimates of future workloads, and the employee's attitude and cooperation with peers and supervisors.

3. The Age Discrimination Act covers those individuals at least 40 years of age. 29 U.S.C. § 631(a) (1982 & Supp. IV 1986). Whether a disparate impact analysis should compare the effect of the challenged employment practice on those over and under age 40 or compare the effect on some different division of the group covered by the Age Discrimination Act is an issue not addressed by the parties. However, deciding this summary judgment motion does not require a resolution of this question.

4. Plaintiffs' statistician noted that, on average, older employees were ranked lower than younger employees.

Apparently, no other court has addressed the problem presented here: the adequacy of plaintiffs' showing of causation at this stage of the proceedings. Generally, a plaintiff presents statistical evidence of disparate impact at trial and attempts to demonstrate that the proffered evidence establishes a causal link between the discrepancies observed in the employer's work force and the challenged employment practice. *E.g., Robinson*, 732 F.2d at 1016–17; *Tagatz v. Marquette University*, 681 F.Supp. 1344, 1357–59 (E.D.Wis.1988). But in the instant lawsuit, plaintiffs have admitted that the statistical data advanced is insufficient to prove an essential element of their claim, i.e., that the Company's facially neutral employment practice caused the alleged age discrimination suffered by Karlin and Botros. Therefore, summary judgment for defendant Stone & Webster on the age discrimination claim is hereby granted.

## II. BREACH OF THE DUTY TO FAIRLY REPRESENT

█ The events leading to the alleged breach of duty by the Union to fairly represent its members began on or about June 19, 1987, and are generally undisputed by the parties. On that day, the Company advertised in THE BOSTON GLOBE for engineers. The job description implied that those hired would engage in design work of the type normally done by members of the bargaining unit. After becoming aware of the advertisement, the Union filed a grievance on or about June 22, 1987, alleging that the Company was hiring or was about to hire engineers to do work normally performed by members of the bargaining unit.

On June 29, 1987, Union officials met with the Company representatives and were informed that although the advertisement conveyed an incorrect impression, the newly hired engineers would not perform any work normally done exclusively by bargaining unit members. According to the Company, the work consisted of the re-evaluation of existing structures. Despite the Company's position, the Union did not withdraw its grievance. Instead, the Union undertook further investigation. Richard Tolson, chairman of the Union's Steward's Committee and a member of the Grievance Committee, contacted two individuals the Company had rehired. He knew both personally but neither of them was cooperative when he requested information about the work they were performing for the Company. Tolson made no further attempts to contact other members because he felt that if the two individuals with whom he was friendly would not cooperate, then neither would others. In addition, on July 16, 1987, the Union requested a list of all laid-off Union members who had been rehired by the Company as engineers. On August 22, 1987, the Union sent a newsletter to all of its members, including those identified by the Company as having been rehired. The newsletter requested members to notify the Union if they were doing the same work upon their rehiring as engineers as they had done previously. No one contacted the Union or its representatives. Also during this period, Paul Almeida, vice-president of the Union, personally observed the work the rehired individuals were performing in Boston and determined that none of it involved designs or drawings normally done exclusively by bargaining unit members.

The Union continued to pursue its grievance at meetings with the Company on September 15, September 18, and September 24, 1987. At these meetings, the Company continued to assert its position that the rehired employees were not doing any bargaining unit design work but only work involving the re-evaluation of existing structures. Based on all of the information available, Almeida and Tolson decided to settle the grievance. The Company admitted that its advertisement was poorly worded but the Union understood that no violation of the collective bargaining agreement was contemplated.

The parties generally do not dispute this description of the relevant events but they do disagree about the conclusions to be drawn from them. Plaintiffs argue that the Union's handling of the grievance was perfunctory. They also submit the affidavit of Peter Chin, a senior designer who

was laid off and then rehired on July 13, 1987, to do engineering work. Chin states that he was performing the same work before and after the layoff at the Company but admits that upon being rehired he performed work involving revisions to existing structures. He also claims that shortly after his rehiring, he informed Tolson about the nature of his work and that Tolson only shook his head in response and that neither Tolson nor any other Union official made any further inquiries of him.[5]

The Supreme Court has ruled that a union owes its members a duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). A breach of this duty "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916. The Union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Id.* at 191, 87 S.Ct. at 917. Even when viewed in a light most favorable to the plaintiffs, the record here does not establish a triable issue regarding the Union's disposition of the grievance. The Union pursued the grievance for some three months. During that time it unsuccessfully sought information from rehired employees as to the type of work done by them and finally, based on personal observation by a Union official, decided that it was indeed different from that allocated exclusively to the bargaining unit.[6] Nevertheless, the Union persisted in its efforts and in September met three times with the Company regarding the grievance. Finally, it concluded that settlement of the grievance was appropriate.

Thus, even assuming that Chin's assertions are true, and even if Tolson could have obtained better information about the work being done by attempting to interview more than two of the rehired employees, as a matter of law the totality of the Union's efforts in this matter amounted at worst to no more than negligence. But "[m]ere negligence of the union does not amount to ... a breach" of its duty to fairly represent its members. *Early v. Eastern Transfer*, 699 F.2d 552, 555 (1st Cir.), *cert. denied*, 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983). Therefore, because no breach of the duty to fairly represent Union members occurred, the motion for summary judgment is allowed.

## III. CONCLUSION

The summary judgment motion of each defendant is hereby granted on the claims based on federal law. This Court, in its discretion, declines to retain jurisdiction over the plaintiffs' state law claims and hereby remands them to the Superior Court for Suffolk County. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## JUDGMENT

In accordance with the Memorandum of Decision, dated April 14, 1989, it is

ORDERED that judgment be and it hereby is entered for defendant on that portion of Count I of plaintiff's complaint claiming violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1982 & Supp. IV 1986) and on Count II of plaintiff's complaint; and it is

FURTHER ORDERED that plaintiff's claim against Stone & Webster Engineering Corporation under the Massachusetts Discrimination Act, Mass.Gen.Laws Ann. ch. 151B, §§ 4, 9 (West 1982 & Supp.1989), be and it hereby is remanded to the Superior Court for Suffolk County.

## JUDGMENT

In accordance with the Memorandum of Decision, dated April 14, 1989, it is ORDERED

(1) that judgment be and it is hereby entered for defendant Stone & Webster

---

5. Chin does not specify the exact date of his encounter with Tolson. It apparently occurred sometime in July or, at the latest, in the first two weeks of August.

6. An earlier arbitration decision involving Stone & Webster and the Union indicated that the kind of work the rehired employees were doing was not exclusively the work of bargaining unit members and the Union officials could reasonably have relied upon that information.

Engineering Corporation on that portion of Count I of Plaintiff's Amended Complaint claiming violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1982 & Supp. IV 1986) and on that portion of Count II of plaintiff's complaint alleging breach of the collective bargaining agreement with Local 105; and (2) that judgment be and it hereby is entered for defendant Local 105 on that portion of Count II of Plaintiff's Amended Complaint alleging breach of duty to fairly represent.

It is FURTHER ORDERED that plaintiff's claim against Stone & Webster Engineering Corporation under the Massachusetts Discrimination Act, Mass.Gen.Laws Ann. ch. 151B, §§ 4, 9 (West 1982 & Supp. 1989), be and it hereby is remanded to the Superior Court for Suffolk County.